UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| ALLSCAPE CLEARING AND MAINTENANCE, INC., | § § § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 6:13-CV-00027 |
| | § | |
| RANKEN ENERGY CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Plaintiff Allscape Clearing & Maintenance, Inc. is a land clearing company located in Goliad, Texas. It entered into a contract with Oklahoma-based Defendant Ranken Energy Corporation to provide land clearing services at seismic exploration sites in Oklahoma. The deal went bad, and Allscape sued Ranken in Texas state court. Ranken removed the case to federal court and now seeks dismissal for lack of personal jurisdiction and venue. Having considered the briefing and applicable law, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction is **GRANTED**.

## I. BACKGROUND

Allscape is a Texas corporation with its principal place of business in Goliad County. Ranken is an Oklahoma corporation with its principal place of business in Edmond, Oklahoma.

The dispute in this law suit arises from a contract in which Allscape agreed to provide brush clearing services for a seismic imaging project Ranken was conducting in Cleveland and Potawottomie Counties, Oklahoma.  Direct contact between the two companies began in April 2012 when Allscape's President Ray Young travelled to Oklahoma and met with Ranken representatives in Shawnee. Young was present at the meeting as a guest of Tidelands Geophsyical, Ranken's seismic contractor for the project and a company that had previously used Allscape.[1]

Most, if not all, of the subsequent negotiation of contractual terms took place in Oklahoma or in phone calls between the parties.  Once negotiations were complete, Ranken mailed the contract to Allscape in Texas, where Young signed it on May 29, 2012.

The only Ranken contacts with Texas related to this contract—either prior to its formation or while it was being performed—were phone calls to Young while he was in Texas and the mailing of the contract and subsequent payments to Allscape in Texas.  No Ranken employee ever travelled to Texas in connection with the contract.  Performance of the contract took place entirely in Oklahoma.

---

[1] Allscape makes the conclusory allegation that "[p]rior to May 29, 2012, [Ranken] contacted [Allscape] at [Allscape's] offices in Goliad, Texas, soliciting Allscape's services in its Thunderbird 3D Seismic Program in Cleveland and Pottawatomie Counties, Oklahoma," but includes no specifics to support this claim. *See* Pl.'s First Am. Compl ¶ 6. (Docket Entry No. 9 at 3).

Allscape alleges that soon after it started providing brush clearing services in Oklahoma, Ranken "began to hound" Allscape, "wrongfully requesting that [Allscape] further reduce its rates and refund monies to [Ranken] for alleged 'overpayments.'" Docket Entry No. 9 ¶ 7. Allscape additionally claims that Ranken wrongfully made demands for proprietary or confidential GPS data that it knew Allscape could not produce. Finally, Allscape claims that in retaliation for its refusals to lower its prices and hand over the requested data, Ranken began spreading false rumors about the quality of Allscape's work to others in the industry.

Allscape originally filed its lawsuit against Ranken in state court in Goliad County on February 26, 2013. After removing the case to federal court, Ranken filed a motion to dismiss for lack of personal jurisdiction. In response, Allscape filed an amended complaint. In this amended complaint, Allscape asserts claims for breach of contract, fraud, tortious interference with contractual relations, and business disparagement. Ranken renewed its motion to dismiss, after which the Court allowed Allscape time to conduct jurisdictional discovery.

## II.  LEGAL STANDARDS

### A.  Rule 12(b)(2) Burden

The plaintiff bears the burden of demonstrating facts sufficient to support jurisdiction when a nonresident defendant challenges personal jurisdiction under

Federal Rule of Civil Procedure 12(b)(2).[2] *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985) (citations omitted). "When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper.'" *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343 (5th Cir. 2002) (quoting *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994)). The court "must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 869 (5th Cir. 2000) (quoting *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999)). "But the court is not obligated to credit conclusory allegations, even if uncontroverted." *Mobius Risk Grp., LLC v. Global Clean Energy Holdings, Inc.*, No. H-10-1708, 2012 WL 590926, at *2 (S.D. Tex. Feb. 22, 2012) (citing *Panda Brandywine Corp. v. Potomac Elec. Power*, 253 F.3d 865, 868 (5th Cir. 2001)).

### B.     The Law of Personal Jurisdiction

Federal courts sitting in diversity may exercise personal jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction

---

[2] Ranken also challenges venue under Rule 12(b)(3). But "[i]n actions removed from state court, venue is *automatically proper* in the federal district court located where the state action was pending." *Masco Operators, Inc. v. Thompson Tractor Co., Inc.*, No. G-12-152, 2012 WL 3028075, at *3 (S.D. Tex. July 23, 2012) (citing Hon. David Hittner et al., *Federal Civil Procedure Before Trial, 5th Circuit Editio*n ¶ 4:394 (2011)) (emphasis in original).

over that defendant and exercising such jurisdiction is consistent with due process. *Delgado v. Reef Resort Ltd.*, 364 F.3d 642, 644 (5th Cir. 2004) (citation omitted). Because the Texas long-arm statute confers jurisdiction to the limits of due process, "the two-step inquiry collapses into one federal due process analysis." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008); *see also* Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041–.045 (West 2013).   Federal due process permits the exercise of personal jurisdiction over a nonresident defendant when: (1) "the non-resident purposely availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the state;" and (2) "the exercise of jurisdiction does not offend 'traditional notions of fair play and substantial justice.'" *Johnston*, 523 F.3d at 609 (quoting *Wilson*, 20 F.3d at 647).

"There are two types of 'minimum contacts': those that give rise to specific personal jurisdiction and those that give rise to general personal jurisdiction." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001).   Two recent Supreme Court decisions issued on the same day highlight the substantially higher degree of contacts needed to establish general jurisdiction, which is "all-purpose" and grants a court the power "to hear any and all claims against" a party regardless of where the events at issue took place, than specific jurisdiction, which is "case-linked" and grants a court only the power to hear "issues deriving from, or connected with, the

very controversy that establishes jurisdiction." *Compare Goodyear Dunlop Tires Operations v. Brown*, 131 S. Ct. 2846, 2851 (2011) (citations and internal quotations marks omitted) (ruling on general jurisdiction), *with J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2787–88 (2011) (ruling on specific jurisdiction).

If a plaintiff is able to establish the contacts necessary for either general or specific jurisdiction, the burden then shifts to the defendant to show that exercising jurisdiction would be unreasonable, meaning it would offend traditional notions of fair play and substantial justice. *See Luv N'care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006) (citations omitted).

## III.   ANALYSIS

Allscape asserts that Ranken's contacts with Texas are strong enough to support both general and specific jurisdiction.  For the reasons discussed below, the Court finds that neither basis for jurisdiction exists.

### A.   General Jurisdiction

A court has general jurisdiction over a nonresident defendant "when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear*, 131 S. Ct. at 2851 (citation omitted).  "The 'continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum.'" *Johnston*, 523 F.3d at 609 (quoting *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d

413, 419 (5th Cir. 2001)).   "[E]ven repeated contacts with forum residents by a foreign defendant may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction." *Revell v. Lidov*, 317 F.3d 467, 471 (5th Cir. 2002).

In terms of its contacts with Texas in addition to those with Allscape previously discussed, Ranken had previously run some wells in Texas, maintaining an active presence through the 2000s.   But Ranken shuttered operations on its last actively managed Texas wells on June 1, 2009.   Ranken maintained a Financial Assurance Bond with the Texas Railroad Commission until May 14, 2012—some two weeks before the contract at issue in this case.   And Allscape points out that Ranken's general Master Well Servicing Agreement contemplates business in Texas because it says that law of the state where a well is located will govern, and mentions Texas as one of four possible states.   *See* Master Well Servicing Contract §§ 5.3, 5.4 (Docket Entry No. 9 at 13).

These contacts come nowhere to close to establishing that Ranken is "essentially at home" in Texas.   *Goodyear*, 131 S. Ct. at 2851; *see also Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–17 (1984) (rejecting general jurisdiction when the nonresident defendant's contacts with Texas "consisted of sending its chief executive officer to Houston for a contract-negotiation session; accepting into its New York bank account checks drawn on a

Houston bank; purchasing helicopters, equipment, and training services from [a Texas company] for substantial sums; and sending personnel to . . . facilities in Fort Worth for training.").  Ranken is not incorporated in Texas, has no offices or employees in Texas, and does not pay taxes in Texas.  It no longer operates wells in Texas. Its only current business activity in Texas aside from the Allscape contract is a minor, nonoperator, ownership interest in two oil leases. These contacts are far less substantial than those found insufficient in *Helicopteros* and other cases rejecting general jurisdiction. *See Id.*; *Johnston v. Multidata Sys. Intern. Corp.*, 523 F.3d 602, 610–11 (5th Cir. 2008) (explaining "just how difficult it is to establish general jurisdiction" by citing numerous Fifth Circuit cases rejecting general jurisdiction, most of which had far more extensive contacts than those present in this case).  This Court therefore cannot assert general jurisdiction over Ranken.

### B.     Specific Jurisdiction

Specific jurisdiction is a much lower threshold.   If "a defendant has relatively few contacts, a court may still exercise specific jurisdiction in a suit arising out of or related to the defendant's contacts with the forum." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006) (citation and internal quotations marks omitted). Even a single contact can support specific jurisdiction if the defendant "purposefully avails itself of the privilege of

conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (citation omitted). The "touchstone is whether the defendant's conduct shows that it reasonably anticipates being haled into court" in the forum state. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009) (citations and internal quotation marks omitted).

Because specific jurisdiction requires a link between the defendant's contacts and the specific claim being asserted, it is a claim-specific inquiry. *Seiferth v. Helicopteres Atuneros, Inc.*, 472 F.3d 266, 274–75 (5th Cir. 2006). When different claims arise from the same contacts, however, the due process analysis will be the same for each. *See id.* at 275 (explaining that when "a plaintiff's claims relate to *different* forum contacts of the defendant, specific jurisdiction must be established for each claim" (italics added)); *Sutton v. Advanced Aquaculture Sys., Inc.*, 621 F. Supp. 2d 435, 442 (W.D. Tex. 2007) ("This Court does not extend the *Seiferth* requirement to establish jurisdiction for each claim to cases where all claims arise from the same contacts."). Although Allscape alleges four causes of action, the only alleged Texas contacts relate to the formation of the contract and Ranken mailing contract payments to Texas. With respect to the tortious interference and business disparagement claims, Allscape does not allege any tortious acts or defamatory statements made in Texas or

directed to Texas businesses.  It therefore follows that if the contacts related to contract formation and payment are not sufficient to confer specific jurisdiction over the breach-of-contract claim, then jurisdiction is also lacking for the other claims with their weaker Texas connection.

"[M]erely contracting with a resident of a forum state does not establish minimum contacts." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007).  Nor are Ranken's additional contacts Ranken with Texas beyond entering into the contract sufficient to subject it to suit in this forum.  The Fifth Circuit "has repeatedly held that the combination of mailing payments to the forum state, engaging in communications related to the execution and performance of the contract, and the existence of a contract between the nonresident defendant and a resident of the forum are insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction over the nonresident defendant." *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 344 (5th Cir. 2004); *see also Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 778 (5th Cir. 1986) (finding no specific jurisdiction over nonresident defendant where the nonresident defendant entered into a contract with a Texas resident, sent an agreement and checks to Texas, and engaged in extensive telephonic and written communication with the plaintiff in Texas).

Indeed, many contract disputes involving contacts with Texas more extensive than those in this case—such as a defendant travelling to Texas and the product being manufactured here—have been dismissed on personal jurisdiction grounds.  *See, e.g.*, *Hydrokinetics, Inc. v. Alaska Mechanical, Inc.*, 700 F.2d 1026 (5th Cir. 1983), *cert. denied*, 466 U.S. 962 (1984).  In *Hydrokinetics*, a nonresident buyer contracted to purchase equipment made in Texas for installation in the buyer's home state of Alaska.  Even though the goods were manufactured in Texas, payment was to be made in Texas, and the buyer's representatives traveled to Texas to close the contract, the Fifth Circuit found personal jurisdiction lacking. *Id.* at 1029–30 ("Although it did agree to purchase goods which it knew were to be manufactured by Hydrokinetics in Texas, no performance by Alaska Mechanical was to take place in Texas, other than perhaps the payment for the goods.").

A key fact in *Hydrokinetics* was that the "transaction was initiated by and substantially negotiated with the plaintiff's representative in [the defendant's home state]," exactly what happened here. *Id.* at 1029. And the absence of any performance in the forum state is even more glaring in this case involving services to be provided in two Oklahoma counties rather than the shipment of goods manufactured in Texas.  *See also Command-Aire Corp. v. Ontario Mech. Sales & Serv. Inc.*, 963 F.2d 90, 94 (5th Cir. 1992) ("At the threshold we seek the place where the contract is to be performed. That is a weighty consideration." (*citing*

*Jones v. Petty–Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 (5th Cir. 1992))).

For these reasons, Ranken's minimal contacts with Texas relating to the brush-clearing contract are not sufficient to give this Court jurisdiction over the contract claims or the tort claims that identify no additional Texas nexus.

### C.    Whether Dismissal or Transfer Is the Appropriate Disposition

Ranken sought transfer to the Western District of Oklahoma on convenience grounds in the event the Court rejected its personal jurisdiction defense.  *See* 28 U.S.C. § 1404.  Though the Court does not reach that alternative argument given its ruling on personal jurisdiction, when "a court finds it lacks personal jurisdiction, it may dismiss the action . . . [or] transfer the action to 'any district or division in which it could have been brought' if the court finds that it is 'in the interest of justice' to transfer the action." *Herman v. Cataphora*, --- F.3d ---, No. 12-30966, 2013 WL 5223101, at *5 (5th Cir. Sep. 17, 2013) (citing *Dubin v. United States*, 380 F.2d 813, 816 (5th Cir. 1967)).

The Court concludes dismissal is proper here. Allscape may prefer suing Ranken in Oklahoma state court (as an in-state defendant, presumably Ranken would not be entitled to remove, *see* 28 U.S.C. § 1441(b)(2)).  And dismissal should not cause a statute of limitations issue given the recency of this controversy.

*Cf. Herman*, 2013 WL 523101, at *5 (noting limitations concerns as a reason for transferring a case in which personal jurisdiction was lacking).

## IV.   CONCLUSION

Allscape has not established that general or specific jurisdiction exists over Ranken in Texas.   Accordingly, Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Docket Entry No. 13) is **GRANTED**.

SIGNED THIS 23RD DAY OF SEPTEMBER, 2013.

_____
GREGG COSTA
UNITED STATES DISTRICT JUDGE